CASE 67—ACTION BY KATE G. RYAN AGAINST THE LOGAN
COUNTY BANK—March 9, 1909.

# Ryan v. Logan County Bank

Appeal from Logan Circuit Court.

R. A. MILLER, Special Judge.

Judgment for defendant. Plaintiff appeals—Reversed.

1. Subrogation—Rights of Surety—A wife, whose property was
   used to pay a debt of her husband for which she was surety,
   is entitled to subrogation to the rights of the creditor in a judg-
   ment against a third person held by the creditor as collateral
   security.
2. Subrogation—Actions to Enforce—Pleading—Prayer for Relief
   —A surety's rights of subrogation to the creditor's collateral
   security may be awarded under a prayer for the entire fund in
   security under an assignment from the debtor.
3. Appeal and Error—Objections Not Raised at Trial—Objections
   to parol evidence cannot be first raised on review.
4. Trusts—Assignment as Security—Parol Evidence—Purpose of
   Writing—Where an assignment of a judgment does not state
   the purpose for which it is given, parol evidence is admissible
   to show such purpose and to establish a trust in the assignee
   in favor of a person not a party to the assignment.
5. Trusts—Conveyance Pursuant to Oral Agreement—A convey-
   ance of property on the faith of an oral agreement to hold it
   for another person creates an enforceable trust in favor of
   such person.
6. Trial—Parol Evidence—Purpose of Assignment—Defendant
   cannot object to parol evidence to show the purpose of an
   assignment of a judgment absolute on its face, where he
   admits in his answer that it was not intended to be absolute,
   but only as security for a debt.

EDWARD W. HINES for appellant; SIMS, DU BOSE & RHODES of counsel.

## POINTS AND CITATIONS.

1. The defense that an assignment of a judgment was made with intent to defraud defendant and other creditors of the assignor is inconsistent with the defense that a prior assignment, subject to which that assignment was made, was intended to secure debts due to defendant amounting to much more than the amount of the original judgment.

2. Where the proceeds of a judgment were deposited in bank under an agreement by the bank to hold the fund pending a determination of conflicting claims, the bank, being a mere bailee, could not defend an action by one of the claimants to recover the fund upon the ground that the judgment was assigned to plaintiff with the intent on the part of the assignor to defraud his creditors. A bailee cannot question the bailor's title. Stephens vs. Vaughn, 4 J. J. Mar. 206; The Idaho, 93 U. S. 575.

3. The bank having accepted the deposit without asserting any claim to the fund other than the claim which it made under the assignment to Caldwell was estopped to make any other claim. Osgood vs. Nichols, 5 Gray, 420.

4. The assignment to plaintiff, even if made with intent to defraud creditors, was valid as to all the world except creditors, and could not be questioned by any person except a creditor who had either obtained judgment for his debt prior to the suit in which the transfer was attacked, or obtained judgment in that suit. 20 Cyc. 419; Anderson vs. Bradford, 5 J. J. Mar. 69.

5. The mere fact that a creditor has possession as trustee or bailee of money belonging to his debtor does not entitle him to apply it to the payment of his debt without the process of any court. First National Bank vs. Stewart, 114 U. S. 224.

6. By the failure of any creditor to attack the assignment to plaintiff within ten years from the time it was made plaintiff's title became perfect, if it was ever defective. Dorsey vs. Phillips, 84 Ky. 420.

7. The mere fact that the assigned judgment was worth something more than the amount of the wife's liability is not sufficient to show fraud. 20 Cyc. 500.

8. As the assignor agreed at the time the wife mortgaged her property to apply the proceeds of the judgment to the payment of the mortgage debt, the wife was a bona fide purchaser for value,

Ryan v. Logan County Bank.

and even if there was any intent to defraud creditors when the assignment was made the wife was not affected thereby as she had no knowledge of the fraudulent intent. Evidence that the assignee had knowledge of the assignor's fraudulent intent, if any, must be potent to overcome the presumption of fair dealing. Allen vs. Gilliland, etc., 5 Ky. Law Rep. 320; Wood vs. Elliott, 9 Ky. Law Rep. 952.

9. The fact that the debtor intended to prefer plaintiff as a creditor is not sufficient to render the assignment fraudulent as to creditors. Hoover vs. Hanks, by etc., 21 Ky. Law Rep. 190; Beatty vs. Dudley, assignee, 80 Ky. 381.

W. P. SANDIDGE for appellee.


POINTS AND AUTHORITIES CITED.

The transfer relied on in the petition and which is made the foundation of plaintiff's claim was actually fraudulent as to all the creditors of C. H. Ryan. Foster vs. Grisby, 1 Bush 91; Lehmer vs. Herr, 1 Duvall, 360; Long vs. Deposit Bank, 28 Ky. Law Rep. 913; Meade vs. Stairs, 88 Ky. 66; Carter vs. Strange, 12 Ky. Law Rep. 642; Farmers & Drovers Bank vs. Unser, 13 Ky. L. R. 966; Prior vs. Smith, 4 Bush, 379; Darnally vs. Darnally, 14 Bush, 485; Maraman vs. Maraman, 4 Met. 84; Wigginton vs. Minter, 28 Ky. Law Rep. 79; Hall vs. Hall, 89 Ky. 516; Waite on Fraudulent Conveyances Sections 301 and 282.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

On October 17, 1893, C. H. Ryan recovered a judgment in the Logan circuit court against F. J. Baird for the sum of $1,666.66, with interest from March 16, 1887. On the next day he assigned the judgment to one H. B. Caldwell, with the following writing, to wit: "For value received, I hereby sell and assign to H. B. Caldwell the judgment rendered in this action, on October 17, 1893, in my favor, for sixteen hundred sixty-six and 66-100 dollars, with interest from March 16, 1887, and against the plaintiff, F. J.

Baird, and all executions to be issued on said judgment are to be for the said Caldwell's use and benefit. Witness my hand this October 18, 1893.  C. H. Ryan.'' Baird appealed from the judgment against him to this court, and it was affirmed. While the appeal was pending, C. H. Ryan assigned the judgment to his wife, appellant herein, with a writing, which is as follows: ''For value I hereby assign and transfer to Kate G. Ryan a judgment which I obtained at the September term, 1893, against F. J. Baird for $1,666.66, interest from March 16, 1887, and on which an appeal is now pending in the Court of Appeals, and which judgment has been transferred heretofore by me to H. B. Caldwell, subject to liens of my attorneys in that case, James H. Bowden and E. W. Hines, for $600,, as collateral security for a debt he held against me, being a note for $2,000, on which he now has judgment.  This assignment is subject to the claim of said Bowden and Hines October 14, 1895. C. H. Ryan.''

F. J. Baird was a resident of Kansas City, Mo. He appealed to this court from the judgment against him without superseding it, and after the affirmance the parties claiming to be interested in the judgment executed the following writing: ''Whereas, the undersigned have this day, by writing, empowered Jas. H. Bowden to go to Kansas City, Mo., and to collect a judgment of the Logan circuit court in favor of C. H. Ryan against F. J. Baird for $1,666.66 2-3, with interest and costs, adjudged to said Ryan by the Court of Appeals, with authority to compromise said demand, if he deems it best to do so; and whereas, the undersigned set up conflicting claims to said judgment, but agree that it is better to have it col-

lected or settled, if possible, and have the money here: It is now agreed that nothing that may be done by said Bowden or by any of the undersigned in getting said money here shall in any way prejudice the right of any one, which shall continue just as they are now; and after deducting his fee, and that of E. H. Hines, aggregating $600.00, and the cost of the clerk of the Court of Appeals, said Bowden shall deposit the residue of what he may receive in the Logan County Bank, and that said bank shall pay the sum deposited, with interest at the rate of 6 per cent. from the date of deposit, to the undersigned C. H. Ryan or Kate G. Ryan, if it shall be finally decided that either of them is entitled to receive same. Out of the funds received by said Bowden, he is to pay said Hines and the clerk of the Court of Appeals. Witness our hands this June 12, 1896. H. B. Caldwell, Cash. Logan County Bank. C. H. Ryan. Katie G. Ryan.''

It appears in the record without contradiction that the judgment against Baird was collected, and, after paying all cost and attorney fees, there remained $2,314, which was deposited in appellee bank on October 2, 1901, under the terms of the agreement above copied. Appellees disputing appellant's right to any part of the Baird judgment when collected, she instituted this action September, 1897, by which she sought to recover the whole amount of the judgment, with its interest, less the cost and attorney's fees. She based her action upon the written assignment to her from her husband, which is copied above, and the following allegations of her petition, to wit: ''Plaintiff says that, after the rendition of the aforesaid judgment against the said Baird in this court,

C. H. Ryan assigned said judgment to the defendant
H. B. Caldwell, then cashier of the Logan County
Bank, as collateral, to secure the said H. B. Caldwell
in the payment of a certain debt of about $2,000
which the said Ryan then owed, and which was
already partially secured by a lien upon a house and
lot, known as the 'Settle house,' and nine unimproved
town lots in Russellville. She says that the said H.
B. Caldwell at the time of the assignment agreed that,
when the judgment against said Baird was paid, the
proceeds thereof should be applied to the payment of
said debt against the Settle property and lots afore-
said as requested by said C. H. Ryan; and H. B.
Caldwell, acting for him, sought and accepted the
assignment of said Baird judgment with the distinct
understanding and contract that it should be held for
the discharge of said debt, and partially secured by
the lien on the Settle property and lots aforesaid, and
for no other purpose." Appellees answered and
denied that the assignment and transfer of the judg-
ment to Caldwell was made as collateral security for
the debt due H. B. Caldwell of $2,000 by C. H. Ryan,
and upon which Ryan's wife was security, and denied
appellant's right to the fund under the assignment
from her husband, alleging that the assignment from
him to her was made with the fraudulent purpose of
cheating and hindering his creditors in the collection
of their debts, and that appellee knew of such pur-
pose on his part. It is shown in the record, without
contradiction, that appellant was only a security of
her husband for the payment of the $2,000 debt due
H. B. Caldwell, and that she had joined in a mort-
gage with her husband to secure H. B. Caldwell in
the payment of the claim; that the mortgage placed

in lien a house and lot in Russellville, Ky., known as the "Ben Settle property," in which she owned a half interest in her own right and her husband owned the other half, and also several vacant lots which were her individual property. It also appears, without contradiction, that in the fall of 1895 H. B. Caldwell enforced the mortgage lien upon the Ben Settle property, and it was sold for the price of $2,510. One-half of the proceeds thereof, $1,255, belonged to appellant and were used to pay the debt of her husband to Caldwell. There was much testimony introduced and many exhibits filed as evidence tending to show fraud on the part of C. H. Ryan. Upon the trial the lower court adjudged that appellant was not entitled to recover the claim sued on and dismissed her petition.

Counsel for the parties have filed elaborate briefs discussing with ability the questions of fraud, estoppel, and others which we deem it unnecessary to name. After a careful consideration of the record, we are of the opinion that the court erred to the prejudice of appellant in dismissing her petition. Under the facts alleged and proved without contradiction, she was entitled to be subrogated to the rights and lien of H. B. Caldwell to the claim against Baird to the extent her property was used in the payment of the H. B. Caldwell judgment. The testimony of C. H. Ryan, relating to the purpose for which the judgment against Baird was assigned to H. B. Caldwell, is as follows: "Q. What was the consideration of this assignment by you to H. B. Caldwell of this Baird judgment? A. That he was to use it in the payment of the $2,000 mortgage he had on that property. I had promised Mrs. Ryan when she gave that

note that, if I got anything out of this judgment, I would take care of the mortgage on that house, and in compliance with that I transferred the debt to H. B. Caldwell, to be used in that way. Q. Was there any agreement as to what should be done with the proceeds of this judgment, other than that it should be used in that way? A. There was not. Q. Was there any agreement or authority or direction given to Caldwell by you that any part of this judgment should be used in the payment of any other debt or liability that you might be owing to him, or the bank, or any one, other than this $2,000 you referred to? A. There was not. The transfer was made voluntarily from me to Caldwell in order to protect this debt, which I promised Mrs. Ryan I would do. Q. Did he ever promise or agree with you that the proceeds of this Baird judgment, if anything was realized from it, should be used for that purpose and nothing else? A. He promised me that the day the transfer was made, and promised to give me a writing, or statement, showing exactly where it would go. Said he was busy at the time and couldn't do it right then, but would do so, and I asked him for that I expect 50 times in the next six months, to give me a statement showing how the Baird money was to go, showing that it was to go to liquidate that debt of $2,000, and he finally gave me a statement written by himself, showing, first, that it was to go to pay anything I owed him, and after that, if anything was left, to apply it on this debt, and that agreement I refused to accept from him, telling him that was not the contract and I would not take it. He then had the transfer, and I could not get any other agreement out of him other than that, and I never accepted any." This testimony

is not contradicted; H. B. Caldwell having refused to testify.

Under this state of facts, and as appellant was merely a surety, she was clearly entitled to be subrogated to all the rights and remedies of H. B. Caldwell. See the cases of Albro v. Robinson, 93 Ky. 195, 19 S. W. 587, and Bickel v. Judah, 3 Ky. Law Rep. 728. In the case last named the court said: "Besides, in regard to sureties, it is a well-settled rule that when 'a surety satisfies the debt for which he is liable, he is entitled to have from the creditor whose debt he pays the securities which such creditor has obtained from the debtor, and, if such securities are not voluntarily given up, it is the right of the surety to come to the court to have such delivered.' Brandt on Suretyship, section 263. 'As soon as the surety has paid the debt, an equity arises in his favor to have all the securities, original and collateral, which the creditor holds against the person or property of the principal debtor, transferred to himself, and to avail himself of them as fully as the ceditor could have done for the purpose of obtaining indemnity, he is considered at once subrogated to all the rights, remedies, and securities of the creditor and entitled to enforce all the liens, priorties, and means of payment as against the principal, and to have the benefit even of securities that were given without his knowledge.' "

It is claimed by appellees that, as appellant did not ask to be subrogated to the claim held in lien by the creditor, Caldwell, she cannot recover. It is true that she did not, in specific terms, ask for this; but she asked for all general and equitable relief. This action was in equity, and she asked for all the fund.

She alleged a state of facts and introduced proof showing that she was clearly entitled to be subrogated, and there is no reason for denying her what she is entitled to of the fund because she did not ask specifically for same, but, instead, asked for the whole fund. Appellees' counsel contends that the assignment of the judgment against Baird by C. H. Ryan was absolute and in writing, and therefore parol testimony is not allowed to vary the terms of the writing. In the first place, the testimony with reference to this matter was introduced without objection. In the second place, it in no way conflicts with the writing. This writing was simply an assignment of the judgment without stating for what purpose it was given, and appellant was not a party to it. The testimony was introduced by her merely to establish a trust in the hands of Caldwell for her benefit. It is well settled that a conveyance of property upon the faith of a parol agreement to hold it for another creates an enforceable trust in their favor. Woolfolk v. Earle, 40 S. W. 247, 19 Kentucky Law Reporter 343, and Garner v. Garner, 4 Kentucky Law Reporter 823. In addition to this appellee's assignee opened the door for parol testimony in his pleading by admitting that the assignment was not absolute, and by alleging that the judgment was assigned to Caldwell as collateral for their debts. In the case of Strader v. Lambeth, 7 B. Mon. 589, this court, in discussing this question, said, in effect, parol evidence is inadmissible to vary the terms of a written contract, unless there be fraud or mistake; but, when the parties admit that the contract was otherwise than as appears by the writing, this rule has no application. Nor does the rule apply to strangers

to the writing. The evidence in this case shows that appellant was induced to become the surety of her husband and place her property in lien for the payment of the debt, upon the promise of her husband that he would assign this judgment as collateral security for the payment of the debt, and as the evidence also shows, without contradiction, that he complied with this promise, and as her property to the extent of $1,255 was taken to pay this debt for which she was security, she is entitled to be subrogated to the collateral held by H. B. Caldwell, and therefore she is entitled to $1,255 out of the funds sued for, with its interest from the time she was deprived of her property for the payment of the Caldwell judgment.

For these reasons the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.

It appears that the parties are in doubt as to the character of judgment that should be rendered on the return of the case to the lower court. Mrs. Kate G. Ryan, appellant, has been given a lien on the judgment debt collected from F. J. Baird and deposited in the Logan County Bank, for the reasons stated in the opinion, for the sum of $1,255, with interest, and she has the first and only lien adjudged against that fund. The court will ascertain the amount of that fund, with its interest, and what the total assets of the insolvent bank will pay on that fund, and out of that sum direct the assignee, or the person in possession of it, to pay Mrs. Ryan her claim, with interest.

We cannot direct how the remainder, if there

should be any, should be disposed of, as C. H. Ryan, appellant's husband, is not a party to this action.