# Caldwell v. Ryan, Executor, et al.

(Decided January 16, 1917.)

## Appeal from Logan Circuit Court.

1. Banks and Banking—Contracts—Contract for Benefit of Third Party.—Where the directors and stockholders of an insolvent bank entered into an agreement in writing with each other by which, in consideration of the stockholders releasing the directors from liability for the negligence in the management of the bank which brought about its insolvency, the directors agreed to satisfy the creditors of the bank, any creditor of the bank had a right to maintain an action on this agreement against the directors for the amount of his debt, as the contract was made for the benefit of all creditors of the bank.

2. Banks and Banking—Contracts—Contract for Benefit of Third Party—Suit On.—The agreement on the part of the directors was rested on a sufficient consideration to bind the directors to perform their part of this contract and was made for the benefit of all the creditors of the bank and was not limited to such creditors as entered into a simultaneous agreement by which they agreed to accept 75% of the amount of their claims.

3. Contracts—Contract for Benefit of Third Party—Suit by Creditor Against One Signer of the Contract.—Where a contract based on a sufficient consideration is entered into for the benefit of creditors who are not parties to the contract, a creditor may sue any one of the persons who made the contract for his benefit and recover from the one sued the whole amount of his debt.

W. P. SANDIDGE for appellant.

SIMS, RODES & SIMS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1896 a controversy arose between Katie G. Ryan and H. B. Caldwell as to the ownership of a certain fund, and on October 20, 1901, the Logan County Bank received this fund under a written agreement stipulating as follows: "Now the said Logan County Bank hereby acknowledges that the said Bowden, on October 2, 1901, deposited with it the sum of $2,314.57, which sum with interest thereon from said date at six per cent. per annum it agrees to pay to the said Katie G. Ryan if it shall be finally decided that she is entitled to the said judgment or its proceeds, or to the said H. B. Caldwell if it is finally decided that he is entitled thereto."

In August, 1902, the Logan County Bank made an assignment for the benefit of its creditors.

The litigation between Caldwell and Mrs. Ryan as to which was entitled to this fund was brought before this court in the case of Ryan v. Logan County Bank, 132 Ky. 625, in which it was decided, in an opinion that was handed down in March, 1909, that Mrs. Ryan had a prior lien on this fund for $1,255, with interest, and the bank was directed to pay her this amount of money. The assignee of the Logan County Bank some time after the decision of the case by this court, perhaps before—it is not material which—paid to Mrs. Ryan a portion of the amount due her, but there was unpaid about eight hundred dollars after exhausting the ability of the assignee to pay any more on the debt.

In 1912, Mrs. Ryan having died, her executor brought this suit against Mrs. Raetz and D. W. Caldwell, but as Mrs. Raetz is no longer concerned in the suit, it is not necessary to again refer to her. In this suit the executor sought to recover the amount left unpaid by the Logan County Bank from Caldwell upon the ground that he became liable for its payment by virtue of certain agreements entered into, which will be later set out.

Some time about December 1, 1902, a large number of the depositors and creditors of the bank signed a paper reciting that "We, the undersigned creditors of the Logan County Bank, of Russellville, Ky., hereby agree with each other and the directors of the Logan County Bank to accept 75 cents on the dollar for our respective claims against said bank, 50% thereof to be paid on or about January 1, 1903, and the remaining 25% thereof ninety days thereafter, and upon payment of said sum we agree to assign our said claims to David W. Caldwell, of Russellville, Ky." This paper was circulated and signed upon the idea that the directors, of whom David W. Caldwell, was one, would personally raise the money to pay the 75 cents on the dollar to the depositors who entered into the arrangement.

On December 1, 1902, this proposition submitted to the directors by the depositors and creditors, or such of them as signed it, was accepted by the directors, including Caldwell. But Mrs. Ryan did not sign this paper, nor would she accept 75% of her claim against the bank on account of the money that had been deposited in the

bank under the agreement heretofore mentioned. It should, however, be here noticed that at the time this arrangement between the depositors and the directors was entered into, it was not known whether Mrs. Ryan was entitled to the money on deposit in bank, as the litigation between her and H. B. Caldwell as to who was entitled to this deposit, was then pending and remained unsettled until the opinion of this court was handed down in March, 1909.

It also appears that the stockholders of the bank and the directors entered into a written agreement reciting that, "In consideration of D. W. Caldwell, W. F. Browder, John G. Orndorff, John W. Caldwell and H. B. Caldwell, directors of the Logan County Bank, making an arrangement with the creditors of the said bank, whereby their claims are to be satisfied or to be paid by said directors and we are released from paying anything under what is commonly known as the double-liability statute, we, the undersigned stockholders of said bank, hereby agree with said directors and with each other to release said directors from any and all liability which said directors may be or are supposed to be under to us as said stockholders by reason of the manner in which the affairs of said bank have been managed and conducted by said directors."

And on December 1, 1902, the directors accepted this proposition of the stockholders in a writing which recited that, "In consideration of the signing of the within contract by the stockholders whose names are attached thereto, we hereby release said stockholders from all liability as shareholders of said bank, this December 1, 1902."

It will thus be seen that by these agreements made between the creditors, the directors, and the stockholders, the creditors who signed the paper agreed to accept in full satisfaction of their claims against the bank 75% of the amount due, and further agreed to turn over to D. W. Caldwell their claims against the bank, and that the creditors of the bank agreed to release the stockholders from their double liability, and the stockholders, in consideration of the directors, "making an arrangement with the creditors of the said bank, whereby their said claims are to be satisfied or to be paid by said directors," and the release of the stockholders from their double liability, agreed to re-

lease the directors from all liability which they might be under to the stockholders by reason of the negligent manner in which the affairs of the bank had been conducted by the directors.

It is very apparent from these writings that the directors of the bank were anxious to be released from their liability for negligence in the conduct of the affairs of the bank which brought about its failure, and the stockholders, while willing to lose the amount they had invested in the stock of the bank, were anxious to be relieved from the payment of the double liability attaching to the ownership of the stock, and the creditors, at least those who signed the paper, were willing to accept 75% of the amount of their claims in consideration of the speedy payment of this sum.

As before stated, this suit was brought against Caldwell upon the theory that he and the other directors, in agreeing with the stockholders to make an arrangement with the creditors whereby their claims were to be satisfied, became liable to Mrs. Ryan for the balance due on her debt against the bank. Or, to state it in another way, the contention of Mrs. Ryan is that this contract was made for the use and benefit of all the creditors of the bank, and that any one of the creditors might sue David W. Caldwell, who apparently was the only solvent director, and recover the full amount of his debt against the bank. It may also be here stated that no issue is raised as to the right to sue Caldwell alone and recover from him the amount due Mrs. Ryan if the directors are liable at all to her for any part of the amount sued for.

On this appeal it is the contention of counsel for Caldwell that as the three papers we have set out were executed simultaneously, the agreement of the directors to make arrangements with the creditors of the bank whereby their claims should be satisfied by the directors, had reference to and was limited to those creditors who had signed the agreement to accept 75% of the amount of their claims and did not constitute an obligation on the part of the directors to pay all the creditors of the bank, or any creditors of the bank except those who had signed this paper. In other words, it is insisted that this contract on the part of the directors was not made for the benefit of any of the depositors or creditors of the bank except those who signed

the agreement to accept 75% of the amount of their debts.

On the other hand, it is insisted by counsel for Mrs. Ryan's estate that this contract was made for the benefit of all the creditors of the bank whether they signed this composition agreement or not, and it being admitted that Mrs. Ryan was a creditor of the bank and that as there was due on her claim against the bank the amount sued for, she or her personal representative had the right to proceed against Caldwell as one of the directors to recover, as she did do, the amount of her claim against the bank left unsatisfied after exhausting the assets of the bank.

It will be observed from this that the whole case turns on the proper construction to be given to the stipulation in the arrangements made between the stockholders and the directors by which the directors, in substance and effect, agreed to settle the claims of the creditors of the bank. This agreement does not specify what creditors the directors are to pay, or limit their liability to pay any class of creditors, or even mention indirectly those creditors who had signed the agreement to accept 75% of the amount of their claims. On the face of the paper it appears to be simply an agreement between the stockholders and the directors by which the stockholders, in consideration of the directors settling with the creditors of the bank, agreed to release the directors from any liability for the management of the bank that brought about its failure, and the directors agreed to pay the creditors of the bank and also release the stockholders from their double liability in consideration of the stockholders releasing the directors from liability for the mismanagement of the bank.

This paper, we think, was rested on a sufficient consideration to bind the directors to perform their part of this contract, and if the agreement of the creditors to accept 75% of the amount of their claims should be put entirely to one side, there would seem to be no obstacle in the way of Mrs. Ryan's estate as a creditor of the bank recovering from Caldwell the amount adjudged; nor do we think that this agreement signed by the creditors can have the effect claimed for it by counsel for Caldwell, or the effect of releasing the directors from their obligation to pay such creditors of the bank as did not sign the composition agreement. Perhaps it

may have been in the contemplation of the directors when they entered into this contract with the stockholders that they were liable only to pay such creditors as signed the composition agreement; but we do not see how this can affect the rights of the creditors who did not sign this composition paper. The creditors of the bank had the right not only to subject the directors as stockholders, and the other stockholders, to the double liability clause, but they had the right to seek indemnity from the directors if they were guilty of negligence in the management of the bank and this negligence resulted in loss to them. Mrs. Ryan, or any other creditor who did not sign this composition agreement, could have pursued either or both of these courses, but when the directors said to the creditors, "We will pay you your debts," there was no reason why the creditors should resort to the remedies they had against the directors or the stockholders. They had a right to look to this paper for indemnity. Plainly the paper was executed for the benefit of the creditors, and it was based on a sufficient consideration.

It seems entirely probable that when the directors assumed this liability they anticipated that they might be able to settle with all the creditors on the 75% terms, but they did not limit their liability to such creditors as they could settle with on these terms. If it was understood between these stockholders and the directors that the liability of the directors should be limited to this class of creditors, it is singular that this limitation was not expressed in the contract, which is very simple and broad enough to embrace all the creditors of the bank.

It seems to us, therefore, that the judgment of the lower court was correct, and it is affirmed.